# EXHIBIT 3

**THE OFFER OR SALE OF THIS WARRANT HAS NOT BEEN REGISTERED WITH THE SECURITIES AND EXCHANGE COMMISSION ("SEC") NOR REGISTERED OR QUALIFIED WITH THE SECURITIES COMMISSION OF ANY APPLICABLE STATE, BUT RATHER IN RELIANCE UPON AN EXEMPTION FROM REGISTRATION UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), AND ANY APPLICABLE STATE SECURITIES LAWS. ACCORDINGLY, THIS WARRANT MAY NOT BE OFFERED OR SOLD WITHIN THE UNITED STATES (AS SUCH TERM IS DEFINED IN REGULATION S UNDER THE SECURITIES ACT) EXCEPT PURSUANT TO (i) A REGISTRATION STATEMENT DECLARED EFFECTIVE BY THE SEC, AND IF REQUIRED, UNDER AN OFFERING STATEMENT QUALIFIED BY THE SEC PURSUANT TO REGULATION A UNDER THE SECURITIES ACT: (ii) OR PURSUANT TO AN AVAILABLE EXEMPTION FROM, OR IN A TRANSACTION NOT SUBJECT TO, THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT, AND IN ACCORDANCE WITH APPLICABLE STATE SECURITIES LAWS AS EVIDENCED BY A LEGAL OPINION OF COUNSEL TO THE TRANSFEROR, SUCH COUNSEL TO BE ACCEPTABLE TO THE COMPANY, TO SUCH EFFECT, AND THE FORM AND SUBSTANCE ACCEPTABLE TO THE COMPANY.**

## CHAIN TECHNOLOGIES RESEARCH

## WARRANT TO PURCHASE TOKENS

This certifies that in consideration of the sums set forth on Schedule 2 hereto (the "***Purchase Price***"), and paid to Chain Technologies Research, an exempted company with limited liability incorporated under the laws of the Cayman Islands (the "***Company***"), on the dates set forth on Schedule 2 hereto (each, an "***Issue Date***"), receipt of which is hereby acknowledged, each undersigned holder or such holder's permitted assignee (each a "***Holder***" and, together with all holders of substantially similar warrants to purchase Tokens (as defined below), the "***Holders***") is entitled, subject to the terms and conditions of this Warrant, to purchase at the applicable Warrant Exercise Price (as defined below), at any time prior to the Termination Date (as defined below), up to Holder's Portion of Tokens (as defined below) issued in any Token Structuring Event (as defined below), upon timely delivery to the Company of a duly executed exercise notice in the form attached hereto as Exhibit 1 (the "***Exercise Notice***") and simultaneous payment of an amount equal to the Warrant Exercise Price or, if permitted, by an election to net exercise as set forth in Section 2.5 hereof.

    1.    **DEFINITIONS.** The following definitions shall apply for purposes of this Warrant:

"***Affiliate***" means, with respect to any specified Person, any other Person who, directly or indirectly, controls, is controlled by, or is under common control with such Person, including without limitation any general partner, managing member, officer, director or trustee of such Person, or any venture capital fund or registered investment company now or hereafter existing that is controlled by one or more general partners, managing members or investment advisers of, or shares the same management company or investment adviser with, such Person,  where "control" is defined as directly or indirectly possessing the power to direct or cause the direction of the management and policies of the Affiliate, whether through ownership of voting securities, by contract or otherwise.

"***Business Day***" means a weekday on which banks are open for general banking business in New York, New York.

"**Company**" shall include, in addition to the Company identified in the opening paragraph of this Warrant, any corporation or other entity that succeeds to the Company's obligations under this Warrant, whether by permitted assignment, by merger or consolidation or otherwise.

"**Company Reserve**" means, with respect to any Token, the aggregate number of such Tokens distributed, reserved for distribution or otherwise Transferred, in a single transaction or series of related transactions, to the Company and any Insiders, which amount shall be no less than 50% of the Total Network Tokens.

"**Deemed Liquidation Event**" means (a) if such term is defined in the Company's Memorandum and Articles of Association, as it may be amended or restated from time to time, then the meaning given to it therein, or (b) if it is not defined therein, then (i) a merger or consolidation in which (A) the Company is a constituent party or (B) a subsidiary of the Company is a constituent party and the Company issues shares of its capital stock pursuant to such merger or consolidation, except any such merger or consolidation involving the Company or a subsidiary in which the shares of capital stock of the Company outstanding immediately prior to such merger or consolidation continue to represent, or are converted into or exchanged for shares of capital stock that represent, immediately following such merger or consolidation, at least a majority, by voting power, of the capital stock of (1) the surviving or resulting corporation; or (2) if the surviving or resulting corporation is a wholly owned subsidiary of another corporation immediately following such merger or consolidation, the parent corporation of such surviving or resulting corporation; (ii) a transaction or series of transactions in which a Person, or a group of related Persons, acquires from shareholders of the Company shares representing more than fifty percent (50%) of the outstanding voting power of the Company; or (iii) the sale, lease, transfer, exclusive license or other disposition, in a single transaction or series of related transactions, by the Company or any subsidiary of the Company of all or substantially all of the assets or intellectual property of the Company and its subsidiaries taken as a whole, or, if substantially all of the assets or intellectual property of the Company and its subsidiaries taken as a whole are held by such subsidiary or subsidiaries, the sale or disposition (whether by merger or otherwise) of one or more subsidiaries of the Company, except where such sale, lease, transfer, exclusive license or other disposition is to the Company or one or more wholly owned subsidiaries of the Company.

"**Excluded Tokens**" means, with respect to any Token, (i) Tokens issued or used solely for development, testing or experimental purposes, (ii) Tokens that may be created and issued following a Token Launch pursuant to staking, rewards or inflationary or dilutive controls; *provided*, that any such Tokens dilute all Tokens equally and (x) are issued in accordance with the governance terms of the Protocol and not, in the sole discretion of the Company as determined in good faith, any Token Affiliate or any Insider, and (y) with respect to any staking or rewards process, the Holders are allowed to participate in any such staking or rewards process on the same basis as other participants (any such Tokens, "**Autonomously Generated Tokens**"), and (iii) non-fungible Tokens issued in arms' length transactions in the ordinary course of business; provided, that no such disposition in excess of 1% of the total non-fungible Tokens issued in the aforesaid transactions or series of related transactions shall be to the Company, any Token Affiliate or any Insider unless the Holders are entitled to participate in any such disposition on the same basis as other participants.

"**Expiration Date**" means, with respect to any specific Token, 60 days following the receipt by Holder of notice of any Token Structuring Event that has occurred with respect to such Token.

"**Founder**" means Paul Faecks.

"**Insider**" means any current or former investors, shareholders, Founders, employees, officers, directors and advisors or other consultants of the Company or any Token Issuer (if other than the Company).

"**Majority Holders**" means, with respect to any Token, the Holders of a majority of the respective aggregate Portion of such Tokens (excluding, for the avoidance of doubt, the Company, the Company's Subsidiaries and Affiliates), which must include BFX Ventures Limited.

"**Parent**" shall mean any entity (other than the Company) in an unbroken chain of entities ending with the Company, if each of the entities other than the Company owns securities possessing more than 50% of the total combined voting power of all classes of securities in one of the other entities in such chain.

"**Person**" means any individual, corporation, partnership, trust, limited liability company, association or other entity, including any decentralized autonomous organization or other similar decentralized or distributed entity.

"**Portion**" means, with respect to Holder and any Token, such amount of Tokens as shall equal (without double counting) Holder's Pro Rata Portion multiplied by the Company Reserve. The "**Pro Rata Portion**", means, with respect to Holder, the ratio (i) that the number of ordinary shares of capital of the Company then held by Holder, including any ordinary shares of capital of the Company issued to Holder or issuable to Holder upon conversion of preference shares of the Company or other outstanding securities of the Company (treating any Simple Agreements for Future Equity or convertible note as having converted at the valuation cap thereof) bears to (ii) the total number of outstanding ordinary shares of capital of the Company after giving effect to the conversion or exercise of all outstanding securities into ordinary shares of capital of the Company (treating any Simple Agreements for Future Equity or convertible note as having converted at the valuation cap thereof), in each case, as of the initial Token Structuring Event of such Token; provided, however, that if Holder has assigned, conveyed or Transferred this Warrant to another Person as permitted by Section 8.2 (a "**Permitted Transferee**"), in no event shall the aggregate Portion of the original Holder and such Permitted Transferees exceed the Portion that would have been attributable to the original Holder if the Warrant had not been assigned, conveyed or Transferred.

"**Pre-Launch Valuation**" means the fair market value per Token as determined by an independent valuation consultant contemporaneously with or following the Issue Date and delivered to the Company in connection with any initial Token Structuring Event.

"**Protocol**" means any blockchain-based network protocol, platform or application (including any blockchain-based network of smart contracts or smart contract participants) created, developed, operated or managed by, or based upon, or incorporating material portions of any intellectual property developed, owned or exclusively licensed by the Company or any Token Affiliate.

"**Subsidiary**" shall mean any entity (other than the Company) in an unbroken chain of entities beginning with the Company, if each of the entities other than the last entity in the unbroken chain owns securities possessing more than 50% of the total combined voting power of all classes of securities in one of the other entities in such chain.

"**Termination Date**" means the earlier of (i) 5:00 p.m. Eastern Time on the date that is 10 years following the Issue Date and (ii) the date the Company and any other Token Issuers irrevocably and affirmatively decide not to develop any Token.

"**Tether Tokens**" means Tether USDt.

"**Token Affiliate**" means (i) any Affiliate of the Company, (ii) any Subsidiary or Parent of the Company, or (iii) any other Person (including any foundation formed by or with the cooperation of the Company) that (a) receives a license or assignment of any material intellectual property from the Company (including, without limitation, any trademarks owned by the Company) and uses such intellectual property to effect a sale or other issuance of Tokens (as such term is defined below); (b) uses intellectual property that

the Company has released under any free software or open source license to effect a sale or other issuance of Tokens, and any officer or key employee of the Company is rendering (or has rendered) material services to such Person, or (if an entity) any officers or key employees of the Company owns a direct or indirect interest in such Person; or (c) is designated or otherwise granted rights by the Company or an Affiliate to such Person to administrate, manage or operate (in lieu of the Company or such Affiliate) any Protocol.

"***Token Issuer***" means the Company, any Token Affiliate or Founder (if, with respect to a Founder, such asset relates to a Protocol or utilizes Company intellectual property and is created either (i) within twelve-months of the public launch of the Protocol or (ii) within twelve-months of such date that the Founder shall no longer be providing services to the Company) or their respective successors or assigns.

"***Token Launch***" means, with respect to any Token, the date such Tokens are first issued to non-Insiders (other than any Token Affiliate).

"***Token(s)***" means any tokens, coins or other digital assets created and issued by any Token Issuer. For the avoidance of doubt Tokens excludes any Excluded Tokens.

"***Token Structuring Event***" means, with respect to any Token, the date such Tokens are minted, generated or created, if ever, and available for issuance, including any Token Launch.

"***Total Network Tokens***" means, with respect to any Token, the total number of Tokens ever to be minted, generated or created over the lifetime of the applicable Protocol (including Tokens issuable on conversion of this Warrant).

"***Transfer***" means, directly or indirectly, (a) offer, sell, loan, collateralize, pledge, hypothecate, sponsor, distribute, issue or otherwise dispose of or encumber, (b) agree or contract to do any of the foregoing, or (c) enter into any swap or other arrangement that transfers to another, in whole or in part, any of the economic consequences of ownership of this Warrant or any Tokens received pursuant hereto.

"***Warrant***" means this Warrant and any warrant(s) delivered in substitution or exchange therefor, as provided herein.

"***Warrant Exercise Price***" means, with respect to any Token, (a) with respect to the initial exercise, the lesser of (i) $1,000 (in the aggregate, to purchase that number of Tokens for which Holder initially exercises this Warrant), and (ii) the Pre-Launch Valuation per Token multiplied by that number of Tokens for which Holder initially exercises this Warrant, and (b) with respect to each subsequent exercise, the lesser of (i) $500 (in the aggregate, to purchase that number of Tokens for which Holder exercises this Warrant) and (ii) the Pre-Launch Valuation per Token multiplied by that number of Tokens for which Holder exercises this Warrant.

2.     **EXERCISE**.

2.1     **Method of Exercise.** Subject to the terms and conditions of this Warrant, Holder may exercise this Warrant with respect to any Token, at any time or from time to time, on any Business Day on or after the initial Token Structuring Event for such Token and before the Expiration Date, for up to Holder's Portion of Tokens; *provided*, *that*, if Holder's Portion is increased pursuant to Section 3.4 following any Expiration Date (a "***Post-Expiration Increase***"), this Warrant may nevertheless be exercised with respect to such Post-Expiration Increase from time to time, on any Business Day on or prior to the Termination Date. Subject to the immediately preceding sentence, this Warrant may be exercised any number of times by Holder to provide Holder the opportunity to purchase up to Holder's Portion of Tokens following each instance that new Tokens are minted, generated or created following the initial Token Structuring Event for such Token, and may be separately exercised with respect to each separate Token. This Warrant shall be exercised by

4

submitting a copy of the Exercise Notice, duly executed by Holder to the Company, and by payment to the Company in a form specified in Section 2.2 hereof of an amount equal to the Warrant Exercise Price, or, if applicable, an election to net exercise this Warrant as provided in Section 2.5 hereof for the number of Tokens to be acquired in connection with such exercise.

        2.2      **Form of Payment.** Payment for Holder's Portion of the Tokens upon each exercise may be made by (a) a check payable to the Company's order, (b) wire transfer of funds to the Company, (c) cancellation of indebtedness of the Company to Holder, (d) by net exercise as provided in Section 2.5 hereof (e) transfer of U.S. dollar stablecoins acceptable to the Company or (f) any combination of the foregoing. For the avoidance of doubt, the Company acknowledges and agrees that: (i) the use of Tether Tokens shall be acceptable to the Company for purposes of Section 2.2(e), and (ii) in the event that Holder decides to use Tether Tokens as Payment for Holder's Portion of the Tokens, the parties shall utilize and exchange rate of 1 Tether Token to 1 U.S. dollar.

        2.3      **Delivery of Tokens.** In connection with each exercise pursuant to this Section 2, Holder will provide to the Company an Exercise Notice specifying a network address to allocate Holder's Tokens to upon such exercise (or otherwise upon the applicable date of delivery, as described herein), and the Company shall deliver, or cause to be delivered, such Tokens to such network address. Holder may update such network address by providing written notice in accordance with Section 8.5; provided, that the Company need not consider such updated network address to be valid until the Company has confirmed receipt of such notice.

        2.4      **Restrictions on Exercise.** This Warrant may not be exercised if the issuance of the Tokens upon such exercise would constitute a violation of any applicable federal or state laws or other regulations, as determined by the Board of Directors of the Company upon the advice of counsel. As a condition to each exercise of this Warrant, Holder shall execute a copy of the Exercise Notice, confirming and acknowledging that the representations and warranties set forth in Section 7 as they apply to Holder are true and complete as of the date of exercise.  In the event that external legal counsel to the Company advises the Company that it is necessary or advisable for regulatory reasons, Holder shall also be required to deliver, as a condition to exercise, an accredited investor verification letter from a qualified third-party verifying that Holder is an "accredited investor" within the meaning of Rule 501 of the Securities Act (as defined below). Holder acknowledges that the Company is not obligated, and the Company has not made any determination, to generate Tokens.

        2.5      **Net Exercise Election.**

                (a)      Upon each exercise of this Warrant and subject to the Transfer Restrictions, Holder may elect to make such exercise without the payment by Holder of any additional consideration, by submitting a copy of the Exercise Notice with the net exercise election selected, duly executed by Holder, for the number of Tokens that is obtained under the following formula:

$$X = Y - (A \div B)$$

where    $X$ = the number of Tokens to be issued to Holder pursuant to a net exercise of this Warrant effected pursuant to this Section 2.5.

          $Y$ = the number of Tokens equal to Holder's Portion.

          $A$ = the Warrant Exercise Price.

          $B$ = the fair market value of one Token, determined at the time of such net exercise as set forth in the last paragraph of this Section 2.5.

5

(b)    The Company will promptly respond in writing to an inquiry by Holder as to the then current fair market value of one Token. For purposes of the calculation in <u>Section 2.5(a)</u>, the fair market value of one Token shall be determined by the Company's or Parent's Board of Directors in good faith.

**2.6    <u>Notice of Expiration, Token Structuring Events and Token Launch</u>.** The Company further covenants and agrees to provide Holder with (i) at least sixty (60) days' notice prior to any Expiration Date, (ii) at least fifteen (15) days' notice prior to a consummation of any Token Structuring Event by a Token Issuer and (iii) at least fifteen (15) days' notice prior to a consummation of any Token Launch, which notice shall include (x) in each case, a description of the number of Tokens that have been issued by a Token Issuer during the term of the Warrant and Holder's Portion (including the calculation of such Portion) and (y) in the case of clause (ii), a description of the Protocol and the Tokens to be issued in such Token Structuring Event.

**3.    <u>ISSUANCE OF TOKENS</u>.**

**3.1    <u>Date of Issuance</u>.** With respect to each exercise, this Warrant shall be deemed to have been exercised immediately prior to the close of business on the date that it is exercised pursuant to the terms of <u>Section 2</u> above, and the Person entitled to receive the Tokens issuable upon such exercise shall be treated for all purposes as the holder of record of such Tokens as of the close of business on such date. As soon as practicable on or after such date, and in any event within two (2) days following such date of exercise, the Company shall issue and deliver, or cause to be issued and delivered, to the network address specific on the Exercise Notice that Holder delivers to the Company the Tokens issuable upon such exercise.

**3.2    <u>Restrictions on Tokens</u>.** The Tokens issued upon each exercise of this Warrant may be subject to such restrictions on Transfer as required by applicable law, as determined by the Board of Directors of the Company on the advice of external legal counsel and certain additional restrictions on Transfer as may be reasonably imposed by the Company including, but not limited to, a minimum one year lockup period commencing at Token Launch (the "***Transfer Restrictions***"); *provided*, that no Transfer Restrictions shall apply after the fourth anniversary of the Token Launch; and, *provided*, *further*, that if Tokens issued (directly or indirectly) to Insiders are subject to restrictions on Transfer that are less onerous than the Transfer Restrictions applicable to Holder, Holder shall be entitled to receive the same restrictions on Transfer as Insiders. In addition, any such Transfer Restrictions shall provide that any discretionary waiver or termination of such restrictions that are approved by the Board of Directors of the Company or any Token Issuer with respect to any Insider shall apply to Holder, pro rata, based on the number of Tokens held by such parties. Notwithstanding anything herein to the contrary, during any period any Tokens issued pursuant to this Warrant are subject to Transfer Restrictions, Holder may (i) Transfer any Tokens to any Affiliate of Holder, provided that Holder shall provide the Company with prior written notice of any such Transfer, and (ii) exercise the voting and other governance rights linked to such Tokens or deploy them towards staking in accordance with the governance and other rules of the Protocol. Holder agrees that the Company may impose, or cause any applicable exchange or custodian to impose, technological lockups or restrictions reasonably designed to enforce compliance with these Transfer Restrictions; provided, that the Company shall have and retain any and all risk of loss of the Tokens arising from such technological lockups or restrictions imposed on the Tokens by or on behalf of any Token Issuer, notwithstanding Holder's or Holder's designated custodian's obtaining custody and possession of the Tokens. For the avoidance of doubt, the foregoing restrictions shall in no event apply to any Tokens acquired by Holder on the open market or through any staking or other protocol-wide programmatic mechanism.

**3.3    <u>Reservation of Tokens</u>.** The Company shall reserve, or cause to be reserved, for the benefit of Holder, and not distribute, sell or encumber, or cause to be not distributed, sold or encumbered, the maximum number of Tokens issuable under this Warrant until this Warrant is fully exercised.

**3.4**    <u>**Token Allocation and Distribution.**</u> With respect to any Tokens that a Token Issuer mints, generates or creates, the Company will, and will cause any Token Issuer, to ensure that the Company Reserve is at least 50% of the Total Network Tokens for such Token. In the event that the Company Reserve for any Token is increased at any time following the initial Token Structuring Event for such Token as a result of actions taken by the Company, any Token Affiliate or any Insider, then Holder's Portion with respect to such Token shall be recalculated to take into account such increase.  In the event that the Total Network Tokens for any Token is increased at any time following the initial Token Structuring Event for such Token, then Holder shall receive Holder's Portion with respect to such Token shall be recalculated to take into account such increase.

**4.**    <u>**ADDITIONAL COVENANTS.**</u>

**4.1**    <u>**Token Custodians.**</u> Promptly following distribution of any Tokens to Holder, the Company will use commercially reasonable efforts to partner with a third-party custodian (including, but not limited to, widely available high quality custody solutions such as Anchorage, Coinbase or another "Qualified Custodian" under SEC rules) so that such custodian will accept and support such Tokens with secure wallet and storage services reasonably following such distribution.

**4.2**    <u>**Sybil Attacks & Airdrop Farming.**</u>  Holder and the Company (severally and not jointly) agree to use reasonable efforts to prohibit their respective employees, contractors, Affiliates and the employees and contractors of Holder's respective Affiliates from creating multiple accounts primarily for the purpose of participating in any retroactive airdrop of Tokens.

**5.**    <u>**EFFECT OF REORGANIZATION, CONSOLIDATION OR MERGER**</u>.

**5.1**    (a) In case of any recapitalization or reorganization of the Company (including the conversion of the Company into a foundation company) or (b) in case the Company shall consolidate with or merge into one or more other corporations or entities, in each case that is not a Deemed Liquidation Event (each, a "***Reorganization Event***"), if after such Reorganization Event, this Warrant is exercisable for Tokens of a corporation or entity other than the Company, then such corporation or entity shall duly execute and deliver to Holder a supplement hereto acknowledging such corporation's or other entity's obligations under this Warrant; and in each such case, the terms of this Warrant shall  be applicable to Tokens receivable upon the exercise of this Warrant after the consummation of such Reorganization Event. The Company shall promptly give Holder at least ten (10) days' prior written notice of each Reorganization Event.

**5.2**    In the event that a Token Issuer completes a Token Structuring Event while this Warrant is outstanding, then this Warrant shall become exercisable for Holder's Portion of such Tokens. The Company covenants and agrees that to the extent that such Token Structuring Event is consummated by any party other than the Company, the Company will, as a condition to any participation in, cooperation with, or transfer or license of rights with respect to, such Token Structuring Event, ensure that the Token Issuer accepts, in writing for the benefit of Holder, the obligation to issue the applicable Tokens to Holder upon exercise of this Warrant in accordance with the terms hereof.

**6.**    <u>**REPRESENTATIONS AND WARRANTIES OF COMPANY**</u>. The Company hereby represents and warrants to Holder as of the Issue Date:

**6.1**    <u>**Organization, Good Standing, Corporate Power and Qualification**</u>.  The Company is duly organized, validly existing and in good standing under the laws of the Cayman Islands and has all requisite corporate power and authority to carry on its business as now conducted and as presently proposed to be conducted. The Company is duly qualified to transact business and is in good standing in each jurisdiction in which the failure to so qualify would have a material adverse effect.

306843346 v4

**6.2**    **Authorization**.  All corporate action required to be taken by the Board of Directors of the Company and the Company's shareholders in order to authorize the Company to enter into this Warrant, and to issue any other similar warrants to purchase tokens from the Company, has been taken or will be taken prior to the Issue Date. All action on the part of the officers of the Company necessary for the execution and delivery of this Warrant, the performance of all obligations of the Company under this Warrant to be performed as of the Issue Date, and the issuance and delivery of this Warrant has been taken or will be taken prior to the Issue Date. This Warrant, when executed and delivered by the Company, shall constitute valid and legally binding obligations of the Company, enforceable against the Company in accordance with their respective terms except (i) as limited by applicable bankruptcy, insolvency, reorganization, moratorium, fraudulent conveyance, or other laws of general application relating to or affecting the enforcement of creditors' rights generally, or (ii) as limited by laws relating to the availability of specific performance, injunctive relief, or other equitable remedies.

**6.3**    **Governmental Consents and Filings**.  Assuming the accuracy of the representations made by Holder in Section 7 of this Warrant, no consent, approval, order or authorization of, or registration, qualification, designation, declaration or filing with, any federal, state or local governmental authority is required on the part of the Company in connection with the issuance of the Warrant, except for filings pursuant to Regulation D of the Securities Act, and applicable state securities laws, which have been made or will be made in a timely manner.

**6.4**    **Marketable Title**.  Upon delivery of the Tokens upon exercise of the Warrant, Token Issuer shall deliver, and Holder shall have, good and marketable title to the Tokens, free and clear of all liens, claims, charges and encumbrances of any kind whatsoever. The Tokens issuable hereunder will be, upon exercise of the Warrant, fully vested and are not subject to any restrictions on transfer that may otherwise bind Holder, except as set forth in Section 3.2.

**7.**    **REPRESENTATIONS AND WARRANTIES OF HOLDER**.  In order to induce the Company to issue this Warrant to Holder, Holder has made representations and warranties to the Company as set forth on Schedule 1.

**8.**    **GENERAL PROVISIONS**.

**8.1**    **Attorneys' Fees.**  In the event any party is required to engage the services of any attorneys for the purpose of enforcing this Warrant, or any provision thereof, the prevailing party shall be entitled to recover its reasonable expenses and costs in enforcing this Warrant, including attorneys' fees.

**8.2**    **Transfer.**  Except as expressly provided hereunder, neither this Warrant nor any rights hereunder may be assigned, conveyed or Transferred by a Holder, in whole or in part, without the Company's prior written consent; provided, that, notwithstanding the foregoing, Holder may assign, convey, or transfer this Warrant and/or any rights hereunder to (a) an Affiliate, partner, member, limited partner, retired or former partner, retired or former member, or stockholder of Holder or (b) subject to the Company's prior written consent, which shall not be unreasonably withheld, any other Person; provided further, and, as a condition precedent to the Company's recognition of such transfer, the transferee shall deliver a counterpart signature page to this Warrant as confirmation that such transferee shall agree to be bound by each of the terms of the Warrant and make the representations and warranties to the Company as set forth on Schedule 1. The rights and obligations of the Company and each Holder under this Warrant shall be binding upon and benefit their respective permitted successors, assigns, heirs, administrators and transferees.

**8.3**    **Governing Law.**  This Warrant shall be governed by and construed under the laws of the Cayman Islands, regardless of the laws that might otherwise govern under applicable principles of conflicts of laws.

8.4      **Headings**. The headings and captions used in this Warrant are used only for convenience and are not to be considered in construing or interpreting this Warrant. All references in this Warrant to Sections and Exhibits shall, unless otherwise provided, refer to sections hereof and exhibits attached hereto, all of which exhibits are incorporated herein by this reference.

8.5      **Notices**. Unless otherwise provided herein, any notice required or permitted under this Warrant shall be given in writing and shall be deemed effectively given (a) at the time of personal delivery, if delivery is in person; (b) when sent, if sent by electronic mail during the recipient's normal business hours, and if not sent during normal business h ours, then on the recipient's next Business Day; (c) one (1) Business Day after deposit with an  express overnight courier for United States deliveries, or three (3) Business Days after deposit with an international express overnight air courier for deliveries outside of the United States, in each case with proof of delivery from the courier requested; or (d) four (4) Business Days after deposit in the United States mail by certified mail (return receipt requested) for United States deliveries, when addressed to the party to be notified at the address indicated for such party on the signature page hereto, or at such other address as any party hereto may designate by giving ten (10) days' advance written notice to all other parties in accordance with the provisions of this Section 8.5.

8.6      **Amendment; Waiver**. This Warrant may be amended and provisions may be waived (either generally or in a particular instance and either retroactively or prospectively), only with the written consent of (i) the Company and (ii) either (A) the Holder, or (B) the Majority Holders, provided that such amendment or waiver applies to all Holders in the same fashion.  Notwithstanding the foregoing, Schedule 2 hereto may be updated by the Company from time to time to add information regarding additional Holders without the consent of the other parties thereto.

8.7      **Severability.** If one or more provisions of this Warrant are held to be unenforceable under applicable law, then such provision(s) shall be excluded from this Warrant to the extent they are unenforceable and the remainder of this Warrant shall be interpreted as if such provision(s) were so excluded and shall be enforceable in accordance with its terms.

8.8      **Confidentiality**. Holder agrees that Holder and its Affiliates will keep confidential and will not disclose, divulge, or use for any purpose any information obtained from the Company that is marked as confidential or that a reasonable person would understand to be confidential, including without limitation any details regarding a Token, the potential launch of a Token, the structure of the Token or any potential airdrop of such Token, unless such information (a) is known or becomes known to the public in general (other than as a result of a breach of this Section 8.8 by Holder or its Affiliate), (b) is or has been independently developed or conceived by Holder without use of the Company's confidential information, or (c) is or has been made known or disclosed to Holder by a third party without a breach of any obligation of confidentiality such third party may have to the Company; provided,  however, that Holder may disclose confidential information (i) to its attorneys, accountants, consultants, and other professionals to the extent reasonably necessary to obtain their services in connection with monitoring its rights or obligations under this Agreement; or (ii) as may otherwise be required by applicable law, provided that Holder promptly notifies the Company of such disclosure and takes reasonable steps to minimize the extent of any such required disclosure.

8.9      **Entire Agreement**. This Warrant, the documents referred to herein and all attachments hereto and thereto, together with all the exhibits and schedules hereto and thereto, constitute the entire agreement and understanding of the parties with respect to the subject matter hereof and supersedes any and all prior negotiations, correspondence, warrants, agreements, understandings duties or obligations between the parties with respect to the subject matter hereof.

8.10      **Further Assurances**. At any time or from time to time after the date hereof, the Company shall cooperate with Holder, and at the request of Holder, shall execute and deliver any further instruments or documents and to take all such further actions as Holder may reasonably request in order to

carry out the intent of this Warrant.

        **8.11**    <u>**No Impairment**</u>.  Except and to the extent waived or consented to by Holder, or as otherwise permitted under the terms hereof, neither the Company nor any Token Issuer will, by amendment of its corporate documents or through any reorganization, transfer of assets, consolidation, merger, dissolution, issue or sale of securities or any other voluntary action, avoid or seek to avoid the observance or performance of any of the terms to be observed or performed hereunder by the Company or such Token Issuer, but will at all times in good faith assist in the carrying out of all the provisions of this Warrant and in the taking of all such action as may be necessary or appropriate in order to protect the rights of Holder hereunder against impairment.

        **8.12**    <u>**Reporting Matters**</u>. The parties hereto intend to treat, and the Company will treat, this Warrant as an option for applicable tax purposes through and including the initial exercise of this Warrant; provided that the foregoing shall not apply should the applicable tax laws change in the future in a way that, in the opinion of external legal counsel to the Company, would cause the Company to violate such tax laws.

        **8.13**    <u>**Counterparts**</u>. This Warrant may be executed in two (2) or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Counterparts may be delivered via electronic mail (including pdf or any electronic signature complying with the U.S. federal ESIGN Act of 2000, e.g., www.docusign.com) or other transmission method and any counterpart so delivered shall be deemed to have been duly and validly delivered and be valid and effective for all purposes.

**[SIGNATURE PAGE FOLLOWS]**

10

**IN WITNESS WHEREOF,** the parties hereto have executed this Warrant to Purchase Tokens as of the date first written above.

**THE COMPANY:**

**CHAIN TECHNOLOGIES RESEARCH**

By: *Paul Faecks*

Name: Paul Faecks

Title: CEO

**IN WITNESS WHEREOF,** the parties hereto have executed this Warrant to Purchase Tokens as of the date first written above.

**HOLDER:**

**BFX VENTURES LIMITED**

By: _____

Name: JL van der Velde

Title: Director

Address: c/o SHRM Trustees (BVI) Limited, Trinity Chambers PO Box 4301, Road Town, Tortola, VG1110 British Virgin Islands

**IN WITNESS WHEREOF,** the parties hereto have executed this Warrant to Purchase Tokens as of the date first written above.

<u>**HOLDER**</u>:

**KARATAGE OPPORTUNITIES**

By: _Leo Kassam_____
Name: _ Leo Kassam_____
Title: Director_____
Address: <u>4th Floor, Harbour Place</u>
<u>103 South Church Street, Grand Cayman,</u>
<u>Cayman Islands, KY1-1002</u>

**IN WITNESS WHEREOF,** the parties hereto have executed this Warrant to Purchase Tokens as of the date first written above.

**BEATRIZ RECARI ERANSUS**

By: _Beatriz Recari Eransus_____

Name: _____Beatriz Recari Eransus_____

Title: _____

Address: 239 WEST COCONUT PALM ROAD

_____BOCA RATON, FL_____

_____33432_____

_____USA_____

**IN WITNESS WHEREOF,** the parties hereto have executed this Warrant to Purchase Tokens as of the date first written above.

**WINONE LIMITED**

By: _____

Name: _____Thibault Reichelt_____

Title: _____Director_____

Address:_____

_____

_____

**IN WITNESS WHEREOF,** the parties hereto have executed this Warrant to Purchase Tokens as of the date first written above.

**MANIFOLD VENTURES FUND I LP**


By: _____

Name: _____ Jae Chung _____

Title: _____ Founding Partner _____

Address: _____ Rodus Building, P.O. Box 3093, ___

_____ Road Town, Tortola, VG1110, ___

_____ British Virgin Islands _____

_____

_____

**IN WITNESS WHEREOF,** the parties hereto have executed this Warrant to Purchase Tokens as of the date first written above.

**ANTHOS CAPITAL V, L.P.**
By: Anthos Associates V, L.P., its General Partner
By: Anthos Associates GP V, LLC, its General Partner

By: _Randy Chandler_____

Name: _Randy Chandler_____

Title: __CFO_____

Address:_____

_____

_____

**IN WITNESS WHEREOF,** the parties hereto have executed this Warrant to Purchase Tokens as of the date first written above.

**MERCURY FUND IV, L.P.**

By: Mercury Fund Partners IV, L.P.
Its General Partner

*Blair Garrou*

By: _____
Name: Blair Garrou
Title: Managing Partner
Address: 3737 Buffalo Speedway, Suite 1750, Houston, TX
_____
_____

306843346 v4

**IN WITNESS WHEREOF,** the parties hereto have executed this Warrant to Purchase Tokens as of the date first written above.

**MERCURY FUND AFFILIATES IV, L.P.**

By: Mercury Fund Partners IV, L.P.
Its General Partner

*Blair Garrou*

By: _____
Name: _Blair Garrou_____
Title: __Managing Partner_____
Address:_3737 Buffalo Speedway, Suite 1750_, Houston ,TX

_____

_____

**IN WITNESS WHEREOF,** the parties hereto have executed this Warrant to Purchase Tokens as of the date first written above.

**PLASMA CLUB COBIE LTD**
By Gm Echo Manager Ltd. (its director)

By: _____
Name:  Glenn Kennedy
Title:    Director/Authorised signatory
Address: Rodus Building, P.O. Box 3093,
               Road Town, Tortola,
               British Virgin Islands,VG1110
_____
_____

306843346 v4

**IN WITNESS WHEREOF,** the parties hereto have executed this Warrant to Purchase Tokens as of the date first written above.

**ASHWIN RAMACHANDRAN**

*Ashwin Ramachandran*

By: _____
Address: 404 Ave. de la Constitucion, Apt. 1903,
         San Juan PR 00901

**EXHIBIT 1**

**EXERCISE NOTICE**

**(To be completed and signed only upon each exercise of the Warrant)**

To: _____ (the "***Company***")

       We refer to that certain Warrant to Purchase Tokens of the Company issued on _____ (the "***Warrant***") and the Token Structuring Event Notice delivered to the undersigned Holder on _____. All terms used but not defined herein have the meanings given to them in the Warrant.

       **Select one of the following two alternatives:**

      ❑  **<u>Cash Exercise</u>.** On the terms and conditions set forth in the Warrant, the undersigned Holder hereby elects to purchase its Portion of the Tokens (the "***Warrant Tokens***"), pursuant to the terms of the attached Warrant, and tenders herewith payment of the Warrant Exercise Price in full.

      ❑  **<u>Net Exercise Election</u>.** On the terms and conditions set forth in the Warrant, the undersigned Holder elects to purchase the Warrant Tokens by net exercise election pursuant to <u>Section 2.5</u> of the Warrant.

       In exercising the Warrant, the undersigned Holder hereby confirms and acknowledges that the representations and warranties set forth in Schedule 1 as they apply to the undersigned Holder are true and complete in all material respects as of the date on which Holder delivers this Exercise Notice. Please (i) issue and deliver the Warrant Tokens to Holder at the network address set forth below and (ii) deliver to Holder, at Holder's address as set forth below, evidence that the Warrant Tokens have been registered in Holder's name and allocated to Holder using the network address set forth below.

_____
(Address)

_____
(City, State, Zip Code)

_____
(Federal Tax Identification Number)

_____
(Network Address)

WHEREFORE, the undersigned Holder has executed and delivered the Warrant and this Exercise Notice as of the date set forth below.

**HOLDER:**

**IF AN INDIVIDUAL:**                    **IF AN ENTITY:**

By: _____            _____
*(duly authorized signature)*            *(please print or type complete name of entity)*

Name: _____            By: _____
*(please print or type full name)*           *(duly authorized signature)*

                                        Name: _____
                                        *(please print or type full name)*

                                        Title: _____
                                        *(please print or type full title)*

Date:_____            Date:_____

## Schedule 1

Holder hereby represents and warrants to the Company as follows:

        **1.1**      **Authorization.** Holder has full power and authority and, with respect to any individual Holder, the capacity to enter into this Warrant. This Warrant, when executed and delivered by Holder, will constitute valid and legally binding obligations of Holder, enforceable in accordance with their terms, except as limited by applicable bankruptcy, insolvency, reorganization, moratorium, fraudulent conveyance and any other laws of general application affecting enforcement of creditors' rights generally, and as limited by laws relating to the availability of specific performance, injunctive relief or other equitable remedies.

        **1.2**      **Purchase Entirely for Own Account**. Holder is acquiring this Warrant for investment for Holder's own account, not as a nominee or agent (other than as set forth on the signature pages hereto), and not with a view to the resale or distribution of any part thereof, and Holder has no present intention of selling, granting any participation in, or otherwise distributing the same or any part thereof. Holder further represents that Holder does not presently have any contract, undertaking, agreement or arrangement with any Person to sell, transfer or grant participations to such Person or to any third Person, with respect to this Warrant or any part hereof. Holder has not been formed for the specific purpose of acquiring this Warrant.

        **1.3**      **Disclosure of Information**. Holder has had an opportunity to discuss the Company's business, management, financial affairs and the terms and conditions of the offering of this Warrant with the Company's management.

        **1.4**      **Restricted Securities**. Holder understands that this Warrant has not been, and will not be, registered under the Securities Act of 1933, as amended (the "***Securities Act***"), by reason of a specific exemption from the registration provisions of the Securities Act which depends upon, among other things, the bona fide nature of the investment intent and the accuracy of Holder's representations as expressed herein. Holder understands that this Warrant is a "restricted security" under applicable U.S. federal and state securities laws and that, pursuant to these laws, Holder must hold this Warrant indefinitely unless it is registered with the SEC and qualified by state authorities, or an exemption from such registration and qualification requirements is available. Holder acknowledges that the Company has no obligation to register or qualify for resale this Warrant. Holder further acknowledges that if an exemption from registration or qualification is available, it may be conditioned on various requirements including, but not limited to, the time and manner of sale, the holding period for this Warrant, and on requirements relating to the Company which are outside of Holder's control, and which the Company is under no obligation and may not be able to satisfy.

        **1.5**      **Accredited Investor**. Holder is an accredited investor as defined in Rule 501(a) of Regulation D promulgated under the Securities Act.

**Schedule 2**

**HOLDERS**

| Name and Address of Holders | Purchase Price | Issue Date |
|---|---|---|
| KARATAGE OPPORTUNITIES | $500 | September 17, 2024 |
| BEATRIZ RECARI ERANSUS | $500 | September 17, 2024 |
| MERCURY FUND IV, L.P. | $500 | September 26, 2024 |
| MERCURY FUND AFFILIATES IV, L.P. | $500 | September 26, 2024 |
| BFX VENTURES LIMITED | $500 | September 27, 2024 |
| ANTHOS CAPITAL V, L.P. | $500 | September 27, 2024 |
| WINONE LIMITED | $500 | October 15, 2024 |
| PLASMA CLUB COBIE LTD | $500 | November 26, 2024 |
| ASHWIN RAMACHANDRAN | $500 | December 23, 2024 |
| MANIFOLD VENTURES FUND I LP | $500 | |
| | | |